## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

BJORN NIELSEN,
      Plaintiff,

      v.

No. 3:15-CV-1154 (MPS)

JENNIFER VAN LEUVEN, et. al.
      Defendants.

## Ruling on Summary Judgment Motion

## I.    Introduction

In the wake of their stormy affair and break-up, the plaintiff, Bjorn Nielsen, sued the defendant, Jennifer Van Leuven[1], alleging that she failed to return a ring given to her in contemplation of their marriage, and she asserted various counterclaims against him. Ms. Van Leuven now contends that she has no obligation to return the ring -- though she agrees it was initially an engagement ring -- because, after a fight between her and Mr. Nielsen in which she returned the ring to Mr. Nielsen, he gave the ring to her as an unconditional apology gift. Mr. Nielsen has moved for summary judgment on four of his five claims – replevin (count 1), unjust enrichment (count 2), conversion (count 3), and civil theft (count 4) – and on Ms. Van Leuven's counterclaims for intentional infliction of emotional distress (count 2), negligent infliction of emotional distress (count 3), conversion (count 6), defamation (counts 10, 11, and 13), civil theft (count 12), and breach of contract (count 14).

I GRANT IN PART AND DENY IN PART Mr. Nielsen's motion for summary judgment. As explained more fully below, Mr. Nielsen's motion for summary judgment is denied as to: (i) his claims concerning the ring (counts 1 through 4) because there exists a genuine issue of

---

[1] The parties' briefs refer to "Ms. Van Leuvan" and "Ms. Van Leuven." (ECF No. 87 at 6; ECF No. 103 at 1.) For clarity, I use "Ms. Van Leuven," the name used in the amended complaint.

material fact as to whether the ring, following the fight, was an engagement ring or an unconditional gift; and (ii) Ms. Van Leuven's counterclaim for defamation (count 11) because there exists a genuine issue of material fact as to whether the statements made by Mr. Nielsen to the Greenwich Police about her were true. Mr. Nielsen's motion for summary judgment is GRANTED, however, as to Ms. Van Leuven's counterclaims for: (i) intentional infliction of emotional distress (count 2) because none of the conduct on which this claim is based reaches the high bar set for "extreme" or "outrageous" conduct; (ii) negligent infliction of emotional distress (count 3) because no reasonable juror could conclude that Mr. Nielsen should have known that the conduct Ms. Van Leuven identifies as the basis for this claim posed an unreasonable risk of emotional distress to her and that that distress might cause illness; (iii) conversion of a Range Rover and her personal property therein (count 6) because there is no evidence in the record Ms. Van Leuven had title to, or the authority to register, the Range Rover, and because she has abandoned the claim for the personal property in the Range Rover; (iv) defamation (counts 10 and 13) because she has also abandoned those claims; and (v) civil theft (count 12) because there is no evidence in the record that Mr. Nielsen intended to deprive her of the handbag and clothing she left at his house in England. Further, for the reasons explained below, within 14 days of this ruling, Ms. Van Leuven shall show cause why I should not grant summary judgment as to the breach of contract counterclaim (count 14) on the ground that enforcement of the alleged contract would be illegal.

## II.     Facts

The following facts, which are taken from the parties' Local Rule 56(a) Statements and the exhibits, are undisputed unless otherwise indicated.

## A. Ms. Van Leuven and Mr. Nielsen Meet on Match.com

In January 2014, Mr. Nielsen and Ms. Van Leuven met through the online dating site, Match.com. (Plaintiff's Local Rule Statement ("Pl.'s L.R. 56(a)(1) Stmt."), ECF No. 93 at ¶ 1; Defendant's Local Rule 56(a)(2) Statement ("Def.'s L.R. 56(a)(2) Stmt."), ECF No. 103-1 at ¶ 1.) On their first date, Mr. Nielsen advised Ms. Van Leuven of his true marital status and age, which differed from the information on his Match.com profile. (Pl.'s L.R. 56(a)(1) Stmt., ¶ 32, Def.'s L.R. 56(a)(2) Stmt., ¶ 32.) Despite those misrepresentations, Ms. Van Leuven willingly continued her relationship with Mr. Nielsen. (Pl.'s L.R. 56(a)(1) Stmt., ¶ 32, Def.'s L.R. 56(a)(2) Stmt., ¶ 32.) Then, on April 20, 2014, four months after meeting, Mr. Nielsen proposed to marry Ms. Van Leuven, and she accepted. (Pl.'s L.R. 56(a)(1) Stmt., ¶ 3, Def.'s L.R. 56(a)(2) Stmt., ¶ 3.) As a token of their engagement, Mr. Nielsen gave Ms. Van Leuven an engagement ring valued at $171,200. (Pl.'s L.R. 56(a)(1) Stmt., ¶ 4, Def.'s L.R. 56(a)(2) Stmt., ¶ 4.)

## B. The May 27-28, 2014 Fight

According to Ms. Van Leuven, on the evening of May 27, 2014, a little over a month after getting engaged, she and Mr. Nielsen had a fight, which lasted until the early morning hours of May 28, 2014. (Pl.'s L.R. 56(a)(1) Stmt., ¶ 17, Def.'s L.R. 56(a)(2) Stmt., ¶ 17.) Ms. Van Leuven testified that during this fight, which took place at Mr. Nielsen's Greenwich, Connecticut home, he physically assaulted her and prevented her from leaving. (ECF No. 103-2 at 16-17.) She further testified that, in the midst of the fight, she gave the engagement ring to Mr. Nielsen and "within a few minutes" told him that the "marriage [was] off." (*Id.* at 28-29.) According to Ms. Van Leuven, several hours later on the morning of May 28, she and Mr. Nielsen spoke about "what happened the night before" including her returning the engagement ring to him – which Mr. Nielsen could not recall. (*Id.*) In Ms. Van Leuven's account, Mr. Nielsen, upon learning of the prior night's

events, became "guilt-ridden" and "was apologizing for not letting [her] leave, and asked [her] to please take the ring back." (*Id*. at 30.) But she "refus[ed] to get re-engaged to him" and "refus[ed] to be in a relationship with him at all." (*Id.*) Mr. Nielsen "insisted that [she] take [the ring] back as an apology present" and that "[r]egardless of what happened, he wanted [her] to have it" as an "apology gift." (*Id.* at 31.) She eventually accepted the ring as an apology gift, and from that point on, in Ms. Van Leuven's mind, the ring was not an engagement ring. (*Id*. at 31-32.)

### C. Mr. Nielsen Demands Ms. Van Leuven Return the Ring

Beginning in June 2014 – weeks after the May 27-28 fight –, Mr. Nielsen began demanding that Ms. Van Leuven return the ring. (Pl.'s L.R. 56(a)(1) Stmt., ¶ 14, Def.'s L.R. 56(a)(2) Stmt., ¶ 14); (ECF No. 103-2 at 61-62.) Ms. Van Leuven, however, did not return the ring, because she claimed to have flushed it down the toilet. (Pl.'s L.R. 56(a)(1) Stmt., ¶¶ 14, 16, Def.'s L.R. 56(a)(2) Stmt., ¶¶ 14, 16.) In an effort to reconcile, in September or October of 2014, Ms. Van Leuven asserts that she and Mr. Nielsen entered into a written contract that set forth their respective requirements to move forward with the relationship. (ECF No. 103-3 at 3.) Under their agreement, Ms. Van Leuven agreed, *inter alia*, "that [they] would have oral sex up to five times a week anytime [Mr. Nielsen] wanted for as long as he wanted" and that she would not sue Mr. Nielsen for statements he had made to Greenwich merchants and police. (*Id*. at 4.) In return, according to Ms. Van Leuven, Mr. Nielsen agreed to purchase her an apartment for not less than $2 million in New York City if the relationship failed for any reason, "clear her name" of false statements he had made to Greenwich merchants and police, apologize to Ms. Van Leuven's brother, friends, and others, and purchase her a Range Rover. (*Id*. at 3-4.)

*******

Additional facts will be recounted below as necessary to address particular claims.

### III.  Legal Standard

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton,* 134 S.Ct. 1861, 1866 (2014)(internal quotation marks and citations omitted).  If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011).  In determining whether summary judgment is appropriate, I must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013).

On summary judgment, "it is undoubtedly [my] duty [] not to weigh the credibility of the parties." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for [the court] on summary judgment." *Id.* at 553.  In this case, the plaintiff urges me to apply a narrow exception to that rule – the *Jeffreys* exception –, which is reserved for "rare circumstances where the plaintiff relies almost entirely on her own testimony much of which is contradictory and incomplete and where the facts alleged are so contradictory that doubt is cast upon their plausibility." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 100 (2d Cir. 2011).  In such cases, the Second Circuit has held the plaintiff cannot show there is a "*genuine* issue [] of material fact," and thus cannot resist summary judgment.  *Jeffreys*, 426 F.3d at 554 (emphasis in original).[2]  This case tests the boundaries of the *Jeffreys* exception and, I ultimately conclude, falls

---

[2] The Second Circuit has not defined the species of contradiction (or set of contradictions) that fall within this exception's bounds other than to declare that the exception is "rare" and to apply it in select cases involving deposition testimony that contradicts repeated, clear pre-deposition

outside them, because Ms. Van Leuven's account, though it suffers from contradictions, is not so implausible as to warrant my removing the factual dispute regarding the status of the ring from the usual mechanism for resolving such disputes – a jury trial.

## IV.     Discussion

### A.     Mr. Nielsen's Claims (Counts 1-4)

Mr. Nielsen seeks summary judgment on his replevin, unjust enrichment, conversion, and civil theft claims, all of which are based on Ms. Van Leuven's alleged failure to return the ring or to compensate Mr. Nielsen for its loss.  (ECF No. 86 at 1.)  The dispositive question underlying Mr. Nielsen's motion as to those four claims is whether a genuine issue of fact exists as to whether, as of May 28, 2014, the ring was an unconditional gift or a conditional gift dependent on the anticipated marriage of Mr. Nielsen and Ms. Van Leuven.  There is no doubt that this issue is material, as Ms. Van Leuven's liability on each of the four claims turns on it. [3]  *See*

---

statements made contemporaneously to health care providers, *Jeffreys*, 426 F.3d at 552, in pleadings (i.e., judicial admissions), or under oath, *Rojas*, 660 F.3d at 105, or involving critical omissions from earlier opportunities to speak on the same subject. *Id*. at 106. But the exception cannot be so broad as to license courts to grant summary judgment every time a party contradicts herself – or even when a party does so when her principal evidence is her own testimony. Such a rule would render obsolete the practice of impeaching witnesses at trial with their own statements, a routine and long-standing trial tactic and, more importantly, would threaten to infringe the Seventh Amendment right to have a jury as the factfinder.  The question, then, is which types of contradictions are so damaging to a witness's credibility that a judge may – before seeing or hearing the witness and equipped with only a cold record – conclude that no reasonable juror could believe the witness. Whatever the bounds of this "rare" exception to the rule against assessing credibility on summary judgment may be, they must afford due deference to the respective roles and responsibilities assigned to judges and jurors by the Seventh Amendment. As discussed below, I can think of no surer way to stay within those bounds than to treat this category as consisting of only the specific types of contradictions relied on in Second Circuit cases applying the *Jeffreys* exception.

[3] Each of Mr. Nielsen's four claims presumes ownership of the ring, and each would fail if Mr. Nielsen gave the ring as an unconditional gift, because such a gift would irrevocably transfer title to Ms. Van Leuven.  *See Wasniewski v. Quick and Reilly, Inc.*, 292 Conn. 98, 103 (2009)(unconditional gift is one where the donor gives "with an intent that title shall pass

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)(observing that "material facts" are those facts that "might affect the outcome of the suit under the governing law"). The question is whether the factual dispute over the status of the ring is "genuine," i.e., whether "the evidence is such that a reasonable juror could return a verdict for the nonmoving party." *Id.*

The parties offer conflicting evidence on the status of the ring. Ms. Van Leuven asserts that while the ring was initially an engagement ring, after she returned the ring to him in the wake of the May 27-28 fight, Mr. Nielsen gave her the ring as an unconditional gift. (ECF No. 103 at 4.) By contrast, Mr. Nielsen submits that the ring – from the date Ms. Van Leuven received it until June 2014 – was an engagement ring, and that Ms. Van Leuven, in an effort to evade liability, at her deposition concocted a self-serving narrative that he gave her the ring as an "apology gift." (ECF No. 87 at 11.) Mr. Nielsen urges me to disregard Ms. Van Leuven's deposition testimony as not credible under the *Jeffreys* exception.

To do so, I must find Ms. Van Leuven's testimony is "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit" it. *Jeffreys*, 426 F.3d at 555. That finding is proper only "in the rare circumstances" where there is "nothing in the record to support [the party's] allegations other than [the party's] own contradictory and incomplete testimony," and "even after drawing all inferences in the light most favorable to the [party], no reasonable person could believe [that party's] testimony." *Id.*

---

immediately and irrevocably to the donee"). By contrast, his claims would succeed if the ring was indeed an engagement ring. *Thorndike v. Demirs*, 2007 WL 2363411, at *10 (Conn. Super. July 26, 2007)(noting "that the gift of the engagement ring is a conditional gift, the condition being the subsequent marriage of the parties. If the marriage does not take place, the condition has not been met and the ring should be returned to the donor.")(internal quotation marks and citations omitted); *Reid v. Shelton*, 2013 WL 7084810, at *2 (Conn. Super. Dec. 30, 2013)(same); *Miller v. Chiaia*, 2011 WL 13677050, at * 2 (Conn. Super. March 15, 2011)(same).

In making such a finding, I may not "engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment." *Matheson v. Kitchen*, 515 Fed. Appx. 21, 24 (2d Cir. 2013)(internal quotation marks and citations omitted.) As the Second Circuit has instructed, "if there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the [] testimony..." *Rojas*, 660 F.3d at 106.

I find that this is not the "rare" case that warrants application of the narrow exception recognized in *Jeffreys* for three reasons: (i) rather than resting on vague, conclusory assertions, Ms. Van Leuven offered in her deposition a lengthy, particularized account of the circumstances surrounding the return of the ring to Mr. Nielsen and his subsequent "apology gift" of the ring to her; (ii) Ms. Van Leuven's account, given the evidence in the record and drawing all inferences in her favor, is not wholly improbable; and (iii) Ms. Van Leuven's account is not so replete with contradictions as to cast doubt upon its plausibility.

First, at her deposition, Ms. Van Leuven offered a detailed account of the place, time, and circumstances under which Mr. Nielsen allegedly gave her the ring as an "apology" gift—a level of specificity frequently missing from the cases applying the *Jeffreys* exception. *Compare Jeffreys*, 426 F.3d at 552 (finding no genuine issue of material fact raised by plaintiff where, in his testimony, he could not "identify any of the individuals who he allege[d] participated in the attack, nor [could] he provide any description of their ethnicities, physical features, facial hair, weight, or clothing" nor "recall how many police officers" were at the scene of the alleged incident); *Johnson v. Brown*, 2010 WL 6243352, at * 10 (N.D.N.Y. Sept. 3, 2010)(concluding the *Jeffreys* exception was applicable where "[t]he only evidence supporting plaintiff's claim that the defendants used excessive force [was] his own deposition testimony…which was decidedly vague….When questioned at his deposition about the details of the assault, plaintiff could

provide few"); *Toliver v. Stefinik*, 2016 WL 3349316, at \*6 (N.D.N.Y. June 15, 2016)("Plaintiff's vague and conclusory allegations that he filed other grievances that were not accepted…[did] not, in light of the documentation that Defendants [] provided about Plaintiff's grievance history create a factual dispute material to the issue of whether Plaintiff exhausted his administrative remedies before he filed his initial complaint."); *with Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010)(finding that plaintiff's testimony should not be disregarded as it was not conclusory or speculative because she was "testifying to the content of a conversation at which she was allegedly present"); *Ali v. Connick*, 136 F. Supp. 3d 270, 280 (E.D.N.Y. 2015)(noting that the "case [was] not one of those circumstances where the court [could] pierce the veil of the complaint's factual allegations," in part, because plaintiff's "testimony [was not] conclusory or speculative"); *Lewis v. Two's Co.*, 2008 WL 6192169, at \*7 (S.D.N.Y. Mar. 16, 2008)("Plaintiff's evidence, while uncorroborated in many respects and somewhat vague, is not so inconsistent, contradictory and incomplete as to warrant summary judgment.")(internal quotation marks and citations omitted).

Ms. Van Leuven's account was flush with details, including a vivid description of an hours-long fight in which an incensed Mr. Nielsen grew increasingly erratic and violent, threatening Ms. Van Leuven to the point that she attempted, unsuccessfully, both to leave Mr. Nielsen's home and to call 911.  (ECF No. 103-2 at 12-13.)  Ms. Van Leuven further testified about the circumstances in which she returned the ring to Mr. Nielsen and the words she spoke at the time – telling him that "this marriage is off." (*Id*. at 28.) [4]  She also described how, at one point during the confrontation, as she attempted to leave, Mr. Nielsen cornered her in his

---

[4] Although she also testified that she "did not think" she said "the engagement is off" when she handed the ring to him (ECF No. 89-1 at 15), she also said that "within a few minutes" she said "this marriage is off." (ECF No. 103-2 at 28.)

bathroom, pushing her and causing her to fall on the marble floor of the bathroom, which resulted in injuries to her arm and head. (*Id*. at 16-17.) Eventually, according to Ms. Van Leuven, Mr. Nielsen allowed her to leave the bathroom, after which she locked herself in a guest room only to have Mr. Nielsen attempt to gain entry by banging on the door. (*Id*. at 19.) In Ms. Van Leuven's account, after Mr. Nielsen's unsuccessful attempts to enter the guest room, the fight finally drew to a close between 3:00 and 3:30 am the morning of May 28. (*Id*. at 19-20.) Ms. Van Leuven testified that, later that morning, as she was leaving Mr. Nielsen's home, she encountered him. (*Id*. at 28-30.) Mr. Nielsen had recently returned from Starbucks and had the ring in his jeans' pocket, and they had a conversation about the prior night's events. (*Id*.) In describing that conversation, Ms. Van Leuven's testimony depicts in exacting detail a repentant Mr. Nielsen, who was "guilt-ridden" by his behavior and "apologizing profusely" for it. (*Id*. at 30). According to Ms. Van Leuven, Mr. Nielsen repeatedly entreated her to "please just take the ring back," and she repeatedly refused. (*Id*.) Ms. Van Leuven testified that, in an attempt to salvage any prospect of a relationship with her, Mr. Nielsen then urged her to take the ring back as an "apology gift" that she could have "[r]egardless of what happened." (*Id*. at 31.) This account – rich with detail – is not the vague, conclusory recollection that is found in the above-cited cases applying the *Jeffreys* exception.

Second, Ms. Van Leuven's account is not wholly improbable – as in cases applying the *Jeffreys* exception where, for example, medical records showed no evidence of the injuries claimed by the plaintiffs. *See e.g.*, *Jeffreys*, 426 F.3d at 552 (medical records of exams following the alleged incident showed, contrary to plaintiff's assertion, that the plaintiff (i) "had not lost consciousness," (ii) there was "no evidence of any head trauma," and (iii) "the absence of any evidence of external injury to [plaintiff's] scalp or facial skin ruled out the possibility that

[plaintiff] suffered a blow to the head with a hard round object such as a flashlight.")(internal quotation marks omitted); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 469-70 (S.D.N.Y. 1998)("Contrary to plaintiff's position,…the medical examination [following the alleged use of excessive force] showed that no abrasions were seen on plaintiff's hands, no abrasions, cuts, or swelling noticed, no bump on plaintiff's forehead, no pain indicated by plaintiff, and the cut on the second finger of plaintiff's left hand had healed.")(internal quotation marks omitted).  In this case, both Ms. Van Leuven and Mr. Nielsen acknowledge – and the texts in the record confirm – that they had a tumultuous relationship from its inception – a relationship characterized by a cycle of fights and recriminations followed by reconciliations.  (ECF No. 103-2 at 3, 7, 11, 19-23, 33-34, 37, 49); (ECF No. 103-6 at 5-7, 9, 11); (ECF No. 103-5 at 2.)  According to Ms. Van Leuven, the emotionally-charged and physical confrontation on May 27-28 that precipitated Mr. Nielsen's "apology gift" of the ring to Ms. Van Leuven was just one of several, similar episodes that occurred throughout the course of their relationship.  (ECF No. 103-2 at 44)(Ms. Van Leuven describing how Mr. Nielsen allegedly physically assaulted her in a hotel room in Paris, France); (ECF No. 12 at 4)(Ms. Van Leuven alleging how Mr. Nielsen allegedly assaulted her in Lambourn, England.)  To be sure, there are aspects of Ms. Van Leuven's account that diminish its plausibility, such as her description in a text message of a fight she had with Mr. Nielsen in June 2014 where she offered to return the ring – suggesting that she did not view it as an "unconditional gift."  (ECF No. 89-1 at 50.)  But that single piece of evidence, especially when viewed in the context of a tempestuous affair, is far from the voluminous medical records and exams that eviscerated the plausibility of the claimed narratives in *Jeffreys* and *Pico*.

Third, in this case, unlike cases applying the *Jeffreys* exception, the record is not riddled with contradictions.  Instead, Mr. Nielsen identifies only two pieces of evidence that he contends

contradict Ms. Van Leuven's testimony. *See, e.g.*, *Jeffreys*, 426 F.3d at 552 (observing that plaintiff's assertions in his memorandum opposing summary judgment were contradicted by his three prior confessions as well as his statements at his guilty plea and sentencing hearing); *Pico*, 994 F. Supp. at 470 (concluding from "the complaint, to plaintiff's deposition, to his opposition papers to defendants' summary judgment motion, plaintiff's allegations of the events at issue are replete with inconsistent and contradictory statements"). The first piece of evidence is a June 2015 letter from Ms. Van Leuven's former attorney to Mr. Nielsen, asserting that Mr. Nielsen made Ms. Van Leuven "wear the engagement ring on her right hand" when she attended the French Open with Mr. Nielsen in June 2014. (ECF No. 89-1 at 24-26.) The second piece of evidence is a June 2014 text message from Ms. Van Leuven to Mr. Nielsen stating "I accepted a ring from you….I am engaged to you."[5] (ECF No. 89-1 at 18-19.) These statements are not sworn. *Compare Rojas*, 660 F.3d at 105. They are not judicial admissions. *See id.* And they were not made to health care providers or corroborated by medical records. *Compare Jeffreys*, 426 F.3d at 552.

Further, only one of these statements – the statement made by her former lawyer calling the ring an "engagement ring" in a June 2015 letter – clearly contradicts Ms. Van Leuven's deposition testimony. (ECF No. 89-1 at 24-26.) Admittedly, Ms. Van Leuven provided her lawyer with the information in the letter, and the letter was sent with her knowledge and consent. (*Id*. at 24-25.) The fact remains, however, that this is a single statement made by Ms. Van Leuven's former counsel, not her. The inconsistency is the type that "might well lead a jury to reject the credibility of [Ms. Van Leuven's] testimony, [but] [it] do[es] not place this case among

---

[5] Neither piece of evidence appears as an exhibit in the summary judgment record. Rather, the documents are only described in Mr. Nielsen's brief and Ms. Van Leuven's deposition testimony.

the extraordinary cases where the facts alleged are so contradictory that doubt is cast upon their plausibility." *See Matheson v. Kitchen*, 515 Fed. Appx. 21, 24 (2d Cir. 2013)(internal quotation marks and citations omitted).

The other statement on which Mr. Nielsen relies – the June 2014 text message from Ms. Van Leuven to Mr. Nielsen that read "I accepted a ring from you….I am engaged to you" – is not, technically, a contradiction. (ECF No. 89-1 at 18-19.) That statement does not refer to the ring as an "engagement ring" or otherwise necessarily contradict Ms. Van Leuven's deposition testimony that the ring was an "apology gift," although a jury could certainly consider it on the issue of credibility. Further, Ms. Van Leuven's deposition testimony offered context for that statement, explaining that, following the May 27-28 fight, there were times when she and Mr. Nielsen were "lovey-dovey" and would refer to themselves as engaged, but that practice, at least in her view, did not change the circumstances under which Mr. Nielsen gave her the ring, which remained an unconditional gift. (ECF No. 89-1 at 16-17); (ECF No. 103-2 at 32, 35-36.) To be sure, such an account may fall short of the straightforward, internally consistent narrative that lawyers hope to elicit from their witnesses, but it does provide some explanation for the alleged contradiction. *See Rojas*, 660 F.3d at 106 ("[I]f there is a plausible explanation for discrepancies in a party's testimony, the Court considering a summary judgment motion should not disregard the later testimony.")(internal quotation marks and citations omitted).

Because Ms. Van Leuven gave a detailed account of the circumstances under which she received the ring from Ms. Nielsen as a gift, because that account is not wholly improbable, and because it is not replete with contradictions (but rather contains only one clear contradiction), I find that her deposition testimony raises a genuine issue of fact as to whether the engagement

ring was an unconditional gift as of May 28, 2014.  Therefore, I deny summary judgment on Mr. Nielsen's claims for replevin, unjust enrichment, conversion, and civil theft.

**B.      Ms. Van Leuven's Counterclaims (Counts 2, 3, 6, 10-14)**

Mr. Nielsen has also moved for summary judgment on Ms. Van Leuven's counterclaims for intentional infliction of emotional distress (count 2), negligent infliction of emotional distress (count 3), conversion (counts 6), defamation (counts 10, 11, and 13), civil theft (count 12), and breach of contract (count 14).

1.      Intentional Infliction of Emotional Distress (count 2)

An intentional infliction of emotional distress claim has four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003)(internal quotation marks and citations omitted).  As for the second element, whether conduct is extreme and outrageous is a question for the court, and becomes a question for the jury only if reasonable minds could differ.  *Lyddy v. Bridgeport Bd. of Educ.*, 3:06-CV-1420 CFD, 2010 WL 4736270, at *9 (D. Conn. Nov. 15, 2010)("Whether the defendants' conduct was extreme and outrageous is the initial question for the court to address. Only if reasonable minds could disagree does it become a question for the jury.")(internal quotation marks and citations omitted). Courts have imposed a high bar for what constitutes "extreme and outrageous" conduct.  *Id.* ("Both federal and state courts in Connecticut have interpreted the qualification of extreme and outrageous conduct strictly.")(internal quotation marks and citations omitted).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond

all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Carrol*, 262 Conn. at 443 (internal quotation marks and citations omitted). Such is the case when "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" *Id.* (internal quotation marks and citations omitted). Conduct, however, "that is merely insulting or displays bad manners or results in hurt feelings is insufficient." *Id.*

The conduct of Mr. Nielsen identified by Ms. Van Leuven as the basis for this claim – misrepresenting in his Match.com profile his age, marital status, involvement in other romantic relationships, and desire to have children (ECF No. 12 at 5) – does not meet the exacting "extreme and outrageous" standard. Even Ms. Van Leuven acknowledged in her deposition that "it was not uncommon for people to put false information Match.com" (ECF No. 89-1 at 33-34) and that she had done so herself. (*Id.* at 34.) Further, Mr. Nielsen disclosed both his true age and marital status to Ms. Van Leuven on their first date, and despite those revelations, Ms. Van Leuven not only pursued the relationship but accepted his marriage proposal. The other bases for the intentional infliction of emotional distress claim – that Mr. Nielsen was involved in other romantic relationships when they started dating and falsely represented that he wished to have children – do not meet the "extreme and outrageous" standard either and are, in any event, belied by the record.[6] Ms. Van Leuven's counterclaim for intentional infliction of emotional distress fails.

---

[6] As for Ms. Van Leuven's claim that Mr. Nielsen was involved in other romantic relationships, she specifically claims that he was romantically involved with a colleague. But both Mr. Nielsen and that colleague testified that no such relationship existed at the time Mr. Nielsen's relationship with Ms. Van Leuven began. (ECF No. 91 at 1)("As I testified at my deposition, I was not in a relationship with [that colleague] when I began dating Ms. Van Leuven."); (ECF No. 89-4 at 4)(the colleague testified that no such relationship existed between her and Mr. Nielsen when he started dating Ms. Van Leuven). Ms. Van Leuven has offered no admissible evidence to rebut this evidence. Furthermore, Ms. Van Leuven's claim that Mr. Nielsen's dating profile represented that

2.      Negligent Infliction of Emotional Distress (Count 3)

To prove a claim for negligent infliction of emotional distress, the plaintiff must show "that the [opposing party] should have realized that [his] conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm." *Carrol*, 262 Conn. at 446 (internal quotation marks and citations omitted). This counterclaim relies on the same conduct – Mr. Nielsen's misrepresentations on his dating profile about his age, marital status, alleged involvement in a romantic relationship, and alleged wish to have children – as the intentional infliction of emotional distress counterclaim. (ECF No. 12 at 5-6.) It fails too, because no evidence in the record would support a finding that Mr. Nielsen should have realized that the above-described conduct posed an unreasonable risk of causing emotional distress and that that distress might cause illness or bodily harm. As discussed above, Ms. Van Leuven acknowledged that it is "not uncommon" to fib in online dating profiles, and when she learned the truth, it did not stop her from continuing the relationship, let alone give the slightest sign of making her ill.[7] As noted, the other alleged misrepresentations are unsupported by the record and thus cannot support an inference that Mr. Nielsen should have known that such conduct involved an unreasonable risk of causing emotional distress. Ms. Van Leuven's counterclaim for negligent infliction of emotional distress thus fails.

---

he "wished to have children" is belied by the profile's text, which reads, in response to whether Mr. Nielsen wanted children, "not sure." (ECF No. 89-5 at 2.)

[7] I note that the Connecticut Supreme Court has cautioned that the negligent infliction of emotional distress should "be limited so as not to open up a wide vista of litigation in the field of bad manners, where relatively minor annoyances had better be dealt with by instruments of social control other than the law." *Montineri v. S. New England Tel. Co.*, 175 Conn. 337, 398 (1978)(internal quotation marks and citations omitted).

3.      Conversion (Count 6)

Ms. Van Leuven claims conversion of a Range Rover and personal property in the Range Rover.  To prevail on this claim, Ms. Van Leuven must show she owned the property at issue. *News Am. Mktg. In-Store, Inc. v. Marquis*, 862 A.2d 837, 848 (Conn. App. 2004)(observing that a conversion claim requires a plaintiff to prove, among other things, that "the material at issue belonged to [her]...").  Under Connecticut law, an owner of a vehicle is defined as "any person holding title to a motor vehicle, or having the legal right to register the same."  *State v. Rodriguez*, 223 Conn. 127, 132 n. 5 (Conn. 1992)(internal quotation marks and citation omitted); *see also Godbout v. Price- Bekech*, 2012 WL 695490, (Conn. Super. Ct. Feb. 10, 2012)(same).[8] But Ms. Van Leuven does not claim to have (nor is there evidence in the record to suggest that she has) title to the Range Rover.  At her deposition, she conceded that title to the Range Rover was in Mr. Nielsen's name, not hers, and that it could not be registered in her name because she did not have a current driver's license.  (ECF No. 89-1 at 69.)  Further, she has not submitted any evidence to support the inference that she had a right to register the vehicle, such as a certificate of registration for the Range Rover.  *See Cook v. Nye*, 9 Conn. App. 221, 226 (1986)(observing that an "owner is any person holding title to a motor vehicle" and "[i]n the case of a privately

_____

[8] Mr. Nielsen asserts the conversion claim should be analyzed under Connecticut law, but suggests ownership of the Range Rover should be determined by New York law because the vehicle is registered in New York.  (ECF No. 87 at 25-26.)  But Mr. Nielsen has not shown why New York law applies here -- there is no evidence in the record that the car was registered in New York.  In any event, I note that the application of New York law here would not yield a different result because both states determine a vehicle's ownership by reference to its title or registration.  *See, e.g., Scheideler v. Scheideler*, 37 Misc.2d 965, 968 (N.Y. Cty. Ct. 1962)(concluding that the party retained ownership over vehicle because he had not transferred title or registration); *see also Lucido v. Mancuso*, 851 N.Y.S.2d 238, 242 (2d. Dept. 2008)(observing that party was estopped from denying ownership because the car was registered in his name); *see also Boston Property Exchange Transfer Co., Inc. v. Pierce*, 2013 WL 6916696, at * 11 (Conn. Super. Dec. 2, 2013)(concluding that there is no conflict between the laws of conversion in Connecticut and New York).

owned car, [the definition of owner] has been applied through the certificate of registration. The certificate, in particular person's name and identifying a particular vehicle, warrants a finding of ownership of that vehicle by the person in whose name the car is registered.")(internal quotation marks and citations omitted). Thus, her conversion claim as to the Range Rover fails.

With respect to the alleged conversion of personal property in the Range Rover, Ms. Van Leuven has failed to respond in her opposition brief to Mr. Nielsen's motion for summary judgment on that claim. (ECF No. 103 at 13.) Therefore, that counterclaim is deemed to be abandoned and summary judgment is granted to Mr. Nielsen. *See, e.g.*, *Bank of Am., N.A. v. Stephanie Properties, LLC*, No. 3:14-CV-00713, 2015 WL 1445237, at *3 (D. Conn. Mar. 30, 2015)(granting summary judgment where "the Guarantors did not address Bank of America's argument, and did not address this claim in their opposition brief"); *Marache v. Akzo Nobel Coatings, Inc.*, No. 08 CIV. 11049 SHS/AJ, 2010 WL 908467, at *15 (S.D.N.Y. Mar. 12, 2010)("[Plaintiff] failed to respond (or even mention) this claim in his opposition brief to [Defendant]'s summary judgment motion.")(citing cases); *Taylor v. City of N.Y.,* 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003)("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in anyway.").

4.      Defamation (Counts 10, 11, and 13)

Mr. Nielsen also moves for summary judgment on Ms. Van Leuven's counterclaims for defamation – counts ten, eleven, and thirteen. With respect to counts ten and thirteen, that Mr. Nielsen defamed Ms. Van Leuven to his daughters and to Mr. Tudor, his boss, those claims are deemed abandoned because Ms. Van Leuven did not oppose Mr. Nielsen's motion for summary

judgment as to those counts.  (ECF No. 103 at 13-16); *Bank of Am., N.A.*, 2015 WL 1445237 at

\*3.

Count eleven, however, survives.  There, Ms. Van Leuven claims Mr. Nielsen defamed

her to the Greenwich Police Department by reporting her as a thief who had stolen the ring from

him.  (ECF No. 103 at 14.)  Under Connecticut law, "for a claim of defamation to be actionable,

the statement must be false."  *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 229

(2004)(internal quotation marks and citations omitted).  As discussed above, there is a genuine

issue of material fact as to whether as of May 28, 2014, the ring was an engagement ring or an

unconditional gift.  Because that dispute exists, there is a genuine issue of material fact as to

whether Mr. Nielsen's statement to the Greenwich Police was indeed false.  Thus, summary

judgment would be improper as to count eleven.

     5.     Civil Theft (Count 12)

Ms. Van Leuven also claims civil theft of personal property left at Mr. Nielsen's English

estate.  (ECF No. 12 at 13.)  This claim requires Ms. Van Leuven to show that Mr. Nielsen had an

"intent to deprive [her] of h[er] property."  *Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745,

771 (2006).  But Ms. Van Leuven has not identified, and I am unaware of, any evidence in the

record that shows Mr. Nielsen intended to deprive her of property she left at his estate.  *Fernwood

Realty, LLC v. AeroCision, LLC*, 166 Conn. App. 345, 359 (2016)(observing that intent may be

inferred from "the defendant's verbal or physical conduct," "the surrounding circumstances," or

the "events leadings up to and immediately following the incident")(internal quotation marks and

citations omitted).  Rather, the record reveals quite the opposite.  Mr. Nielsen returned to Ms. Van

Leuven all the property she claimed to have left at his estate with the exception of a Celine purse

and some clothing.  (ECF No. 89-1 at 70.)  And with respect to those items, at her deposition, she

acknowledged that she voluntarily left them at Mr. Nielsen's estate "[b]ecause [she] was going to be returning." (*Id.*) There is no evidence in the record to infer that Mr. Nielsen intentionally kept those items from Ms. Van Leuven, or was even aware that the items had been left at his estate. Furthermore, there is no evidence suggesting Ms. Van Leuven took any affirmative steps to reclaim the remaining items, such as making a demand for them that Mr. Nielsen refused to comply with. In short, there is no evidence in the record to support a reasonable inference that Mr. Nielsen intended to steal the Celine purse and clothing from Ms. Van Leuven. If anything, the evidence in the record suggests an intent to abandon those items by Ms. Van Leuven based on her apparent failure to assert any right to those items. *See Mendez v. JPMorgan Chase Bank, N.A.*, X04HHDCV146049524S, 2016 WL 402008, at *4 (Conn. Super. Jan. 8, 2016)("While mere nonuse and lapse of time alone are not enough to constitute abandonment, they are competent evidence of an intent to abandon, and as such may be entitled to great weight when considered with other circumstances, and abandonment may be inferred from circumstances, such as failure by acts or otherwise to assert the right alleged to have been abandoned, or may be presumed from long continued neglect…")(internal quotation marks and citations omitted). In any event, the civil theft counterclaim fails for want of any evident in the record to support it.

6.     Breach of Contract (Count 14)

Finally, Mr. Nielsen has moved for summary judgment on Ms. Van Leuven's breach of contract counterclaim. Ms. Van Leuven contends that she and Mr. Nielsen entered into a written contract and that Mr. Nielsen breached that contract. The contract, according to Ms. Van Leuven, provided, *inter alia*, that in exchange for "oral sex up to five times a week any time [Mr. Nielsen]

wanted for as long as he wanted," Mr. Nielsen would, among other things[9], purchase an apartment in New York City for up to $2 million if the relationship ended.  (ECF No. 103-3 at 3-4.)  Mr. Nielsen contends the contract is unenforceable on four grounds.

First, Mr. Nielsen contends he is entitled to summary judgment because Ms. Van Leuven "has not produced the 'written contract' and she has not testified she cannot find it."  (ECF No. 87 at 31.)  But she is not required to do so.  In the contract's absence, she must show (i) "the former existence and present unavailability of the missing [contract]," and (ii) "the contents of the missing [contract]."  *Conn. Bank & Trust Co. v. Wilcox*, 201 Conn. 570, 573 (1986)(internal quotation marks and citations omitted).  She has done both.  (ECF No. 89-1 at 35)(Ms. Van Leuven testified that, though she has "looked in [her] apartment," she "believe[s]…[the contract] is either misplaced somewhere in [her] apartment or that [Mr. Nielsen] destroyed it" and that the "[t]he last time [she] saw [the contract] was when [she] was in Greenwich"); (ECF No. 103-3 at 3-4)(Ms. Van Leuven's interrogatory response describing in detail the contents of the contract.)  Mr. Nielsen's second basis – that the contract is barred by the statute of frauds because she has not produced the written contract – fails for the same reason.[10]  His remaining grounds – that Ms. Van

---

[9] Other provisions of the contract allegedly required Mr. Nielsen to retract false statements he had made to certain merchants, an investigator, and to the Greenwich Police Department; apologize to certain of Ms. Van Leuven's friends and a parking attendant; buy her a Range Rover; reimburse her for legal fees; and begin therapy.  (ECF No. 103-3 at 3-4.)

[10] To the extent the contract provided for the purchase of an apartment of not more than $2 million, the contract falls squarely within the statute of frauds and was required to be in writing. Conn. Gen. Stat. § 52-550 (a) (providing in part "[n]o civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: (4) upon any agreement for the sale of real property or any interest in or concerning real property..."). But because, as discussed above, Ms. Van Leuven does not have to produce the contract, and because she offered evidence that the contract was signed by Mr. Nielsen (ECF No. 103-3 at 4), the statute of frauds does not defeat Ms. Van Leuven's breach of contract counterclaim.

Leuven failed to submit evidence that she fully performed her contractual obligations, and that she suffered any damages (ECF No. 87 at 31) – fail too. Ms. Van Leuven's sworn interrogatory responses state that she "fully complied with all of" her obligations under the contract. (ECF No. 103-3 at 4.) Further, even if Ms. Van Leuven did not "articulate any breach of contract damages" (ECF No. 87 at 31), she may recover nominal damages on this claim—which is sufficient for the counterclaim to survive on summary judgment. *See Lydall v. Ruschmeyer*, 282 Conn. 209, 254 (2007)(though plaintiff "could point to no pecuniary damages," plaintiff, nonetheless, was "entitled to nominal damages of $1 under its breach of contract claim"); *News America Marketing In-Store v. Marquis*, 86 Conn. App. 527, 535 (2004)("If a party has suffered no demonstrable harm…that party…may be entitled to nominal damages for breach of contract.")(internal quotation marks and citations omitted). Though these arguments do not warrant summary judgment as to this counterclaim, there appears to be another basis – asserted in Mr. Nielsen's answer (ECF No. 18 at 15) but omitted from his brief – that would: illegality.

"As a general rule, a court will not lend its assistance in any way toward carrying out the terms of a contract, the *inherent purpose* of which is to violate the law..." *Dowling v. Slotnik,* 244 Conn. 781, 807 (1998)(internal quotation marks, alterations, and citations omitted)(emphasis in original). According to both parties, the contract called for the provision of sexual acts – specifically, oral sex. (ECF No. 103-3 at 4; ECF No. 103-6 at 3.) Contracts for sexual acts are not enforceable as they violate both public policy and criminal law. *Boland v. Catalano*, 202 Conn. 333, 339 (1987)("Contracts expressly providing for the performance of sexual acts, of course, have been characterized as meretricious and held unenforceable as violative of public policy.")(internal quotation marks and citations omitted); *see also Ford v. Anderson*, CV000804029, 2003 WL 231666, at *1 (Conn. Super. Jan. 9, 2003)(finding no breach of

contract claim where plaintiff "received [money]…in exchange for fantasy role-playing sexual encounters" which "raise[d] serious questions of violation of…prostitution statutes..."). Thus, it would appear that the breach of contract counterclaim fails because the contract at issue is unenforceable. But as discussed above, this ground was not raised by Mr. Nielsen, and under Rule 56(f) of Federal Rules of Civil Procedure, I may grant summary judgment on a ground not raised by a party only "[a]fter giving notice and reasonable time to respond." Fed. R. Civ. P. 56(f); *see also Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015)("Rule 56 does permit a sua sponte grant of summary judgment dismissing a claim—but only under certain conditions…Rule 56(f) permits a district court to grant summary judgment on grounds not raised by a party…[b]ut a district court may do so only after giving notice and reasonable time to respond.")(internal quotation marks, alterations, and citations omitted). Therefore, I will defer ruling on the breach of contract counterclaim until both parties have had an opportunity to brief this issue in accordance with my instructions set forth in the Conclusion below.

## V.      Conclusion

As set forth above, Mr. Nielsen's motion is GRANTED IN PART AND DENIED IN PART. In addition to the counterclaims as to which Mr. Nielsen did not seek summary judgment, i.e., assault and battery (counts 1, 4, and 7), false imprisonment (count 5), and defamation (counts 8 and 9), the following claims survive for trial: (i) all of Mr. Nielsen's claims, and (ii) Ms. Van Leuven's counterclaim for defamation as to the Greenwich Police (count 11). The following claims are dismissed: Ms. Van Leuven's counterclaims for intentional infliction of emotional distress (count 2), negligent infliction of emotional distress (count 3), conversion (count 6), defamation (counts 10 and 13), and civil theft (count 12). With respect to Ms. Van Leuven's breach of contract counterclaim (count 14), within **fourteen (14) days** of this order, Ms. Van

Leuven shall show cause why summary judgment should not be granted to Mr. Nielsen on the ground that the contract is unenforceable due to illegality.  Mr. Nielsen shall then have **fourteen (14) days** to file a response to Ms. Van Leuven's brief.  No replies will be permitted.  Further, the deadline for the parties' joint trial memorandum is hereby extended by fourteen (14) days.  The joint trial memorandum is due on or before **September 22, 2017**.  Finally, if the parties wish to mediate with a magistrate judge before trial, they shall jointly file a statement on or before **August 22, 2017**, certifying that (1) counsel have conferred with their clients and each other, (2) the parties wish to proceed to mediation, (3) the parties are willing to participate in settlement efforts in good faith, and (4) counsel believe that a mediation stands at least a reasonable chance of resolving the case without trial.

IT IS SO ORDERED.

/s/ _____
Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                August 8, 2017