UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BJORN NIELSEN,
    Plaintiff,

v.

JENNIFER VAN LEUVEN, et. al.
    Defendants.

No. 3:15-CV-1154 (MPS)

## Ruling on Breach of Contract Counterclaim

**I.    Introduction**

On August 8, 2017, I granted in part and denied in part Mr. Nielsen's motion for summary judgment. (ECF No. 108.) In that order, I deferred ruling as to Ms. Van Leuven's counterclaim for breach of contract because, though it appeared the contract was unenforceable due to illegality, the parties had not raised that issue in their briefs. In accordance with Rule 56 of the Federal Rules of Civil Procedure, I gave the parties notice that I was contemplating granting summary judgment in favor of Mr. Nielsen on Ms. Van Leuven's breach of contract counterclaim because the contract was unenforceable, and ordered them to show cause why I should not do so. (*Id*. at 23.) The parties have filed their responses. (ECF Nos. 110, 111.) After carefully considering those briefs, I grant summary judgment to Mr. Nielsen on Ms. Van Leuven's breach of contract counterclaim because the contract at issue called for the performance of a sexual act, specifically oral sex, and is thus unenforceable. I presume familiarity with my August 8, 2017 ruling (ECF No. 108) on Mr. Nielsen's motion for summary judgment. I recount only the facts necessary decide whether Mr. Nielsen is entitled to summary judgment on Ms. Van Leuven's breach of contract counterclaim.

## II. Legal Standard

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014)(internal quotation marks and citations omitted). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). In determining whether summary judgment is appropriate, I must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). Further, under Rule 56(f) of the Federal Rules of Civil Procedure, I may grant summary judgment on a ground not raised by a party "[a]fter giving [the parties] notice and reasonable time to respond." Fed. R. Civ. P. 56(f).

## III. Discussion

Connecticut law is clear: "Contracts expressly providing for the performance of sexual acts, of course, have been characterized as meretricious and held unenforceable as violative of public policy." *Boland v. Catalano*, 202 Conn. 333, 339 (1987)(internal quotation marks and citations omitted). The contract at issue here is such a contract, as Mr. Nielsen concedes (ECF No. 111), and Ms. Van Leuven's allegations and responses to interrogatories make apparent. (ECF No. 12 at 15)(alleging that "in exchange for the plaintiff's promises….the defendant Van Leuven promised....that she would permit the plaintiff to perform oral sex whenever he wished to do so"); (ECF No. 103-3 at 4)(Ms. Van Leuven stating in response to Mr. Nielsen's interrogatory that the contract called for "[her and Mr. Nielsen] [to] have oral sex up to five times a week any time [Mr. Nielsen] wanted as long as he wanted.") Further, the importance of Ms. Van Leuven's

contractual obligation to perform sexual services is underscored when the contract is viewed as a whole. While Mr. Nielsen had a lengthy series of obligations under the contract, Ms. Van Leuven had very few apart from her obligation to provide sexual services. Specifically, Mr. Nielsen was required to purchase an apartment for Ms. Van Leuven in New York City for up to $2 million if their relationship ended; "retract false statements he had made to certain merchants, an investigator, and to the Greenwich Police Department; apologize to certain of Ms. Van Leuven's friends and a parking attendant; buy her a Range Rover; reimburse her for legal fees; and begin therapy." (ECF No. 108 at 21 n. 9.) By contrast, aside from performing oral sex with Mr. Nielsen whenever he desired, Ms. Van Leuven had only to attend couples' therapy with Mr. Nielsen and spend five nights a week in Greenwich with him. (ECF No. 103-3 at 4.) Further, the latter provision was presumably included at least in part to facilitate performance of the obligation to provide oral sex. The contract between Mr. Nielsen and Ms. Van Leuven thus expressly and prominently provided for oral sex and therefore is "meretricious." It is therefore unenforceable.

Ms. Van Leuven's arguments to the contrary are unavailing. First, without citing any evidence in the record, she asserts that the characterization of the agreement as one for the provision of oral sex is inaccurate. (ECF No. 110 at 1 n. 1.) That assertion, as shown above, is plainly rebutted by Ms. Van Leuven's own allegations and her responses to Mr. Nielsen's interrogatories. (ECF No. 12 at 15)(alleging that "in exchange for the plaintiff's promises….the defendant Van Leuven promised....that she would permit the plaintiff to perform oral sex whenever he wished to do so"); (ECF No. 103-3 at 4)(Ms. Van Leuven stating in response to Mr. Nielsen's interrogatory that the contract called for "[her and Mr. Nielsen] [to] have oral sex up to five times a week any time [Mr. Nielsen] wanted as long as he wanted.")

Next, in support of her position, Ms. Van Leuven cites *Boland v. Catalano*, 202 Conn. 333, 340 (1987) for the proposition "that contractual rights may develop in the course of cohabitation that includes a sexual relationship…" (ECF No. 110 at 4.) *Boland* does not help her, however, as it stands only for the proposition that "[o]rdinary contract principles are not suspended…for married persons living together, whether or not they engage in sexual activity." 202 Conn. at 339 (internal quotation marks and citations omitted). Ms. Van Leuven omits *Boland's* declaration that "courts should enforce express contracts between nonmarital partners *except to the extent the contract is explicitly founded on the consideration of meretricious sexual services*." *Id.* at 340 (internal quotation marks, alterations, and citations omitted)(emphasis added). As discussed above, the contract between Mr. Nielsen and Ms. Van Leuven is unquestionably one for "meretricious sexual services." The issue, then, is not, as Ms. Van Leuven suggests, whether she and Mr. Nielsen could enter into a valid, enforceable contract as an unmarried couple engaging in a sexual relationship. The issue is whether Mr. Nielsen and Ms. Van Leuven can enforce a contract explicitly predicated on the provision of a sexual act (i.e., oral sex) – a question the Connecticut Supreme Court has considered and answered in the negative.

Ms. Van Leuven also suggests in a footnote that the Court "easily could without violating the intent of the parties sever the 'oral sex' clause..." (ECF No. 110 at 5 n. 3) But she points to no evidence in the record of any intent that the sexual provision of the contract is independent of the rest and thus could be severed without destroying the entire bargain – evidence that is necessary to find the contract severable. *See, e.g., Venture Partners, Ltd. v. Synapse Technologies, Inc.*, 42 Conn. App. 109, 118 (1996)("It is the general rule that a severable contract is one in its nature and purpose susceptible of division and apportionment…The

4

determinative test is in ascertaining from the language used, reading the light of the surrounding circumstances what was the intention of the parties.")(internal quotation marks, alterations, and citations omitted); *Haller Testing Labs, Inc. v. A. Lurie, Inc.*, 24 Conn. Supp. 1, 3 (Conn. Cir. 1962)("The authorities agree that in the determination of whether a contract shall be treated as severable or as an entirety the intention of the parties will control and that intention must be determined by a fair construction of the terms and provisions of the contract itself.")(internal quotation marks and citations omitted). And as noted, the evidence in the record indicates that the provision of sexual services was an important part of Ms. Van Leuven's obligations under the contract. Accordingly, Ms. Van Leuven's severability argument fails.

Finally, even if, as Ms. Van Leuven asserts, the parties entered into the contract for the purpose of improving their relationship, that would not change the result here. (ECF No. 110 at 4.) If Ms. Van Leuven were correct that a contract requiring the performance of sexual services was enforceable as long as sex was not its sole or primary purpose, then parties could easily circumvent the public policy against enforcing sexual obligations by ascribing lofty motives to bargains that included sexual obligations. They could thereby enlist the courts in enforcing the performance of sexual acts, which would violate public policy.

## IV. Conclusion

For the reasons set forth above, Mr. Nielsen is entitled to summary judgment on Ms. Van Leuven's breach of contract counterclaim. The claims and counterclaims that remain for trial are: (i) all of Mr. Nielsen's claims, and (ii) Ms. Van Leuven's counterclaims for assault and battery (counts 1, 4, and 7), false imprisonment (count 5), and defamation (counts 8, 9, and 11).

5

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
September 7, 2017